Jeffrey A. Long, OSB No. 862350
Marc E. Dann, Ohio No. 0039424 *Pro Hac* Admission Pending
Oregon Consumer Law Center
4040 SW Douglas Way
Lake Oswego, OR 97035
Telephone: (503) 635-7773
Fax: (503) 822-6727
Email: jeff@oregonconsumerlawcenter.com; notices@dannlaw.com
*Counsel for Plaintiff Tanya M. DeCharles*

## UNITED STATES DISTRICT COURT
## DISTRICT OF OREGON
## PORTLAND DIVISION

| | |
|---|---|
| **TANYA M. DeCHARLES**,<br>9142 NE Alberta St.<br>Portland, OR 97220<br><br>Plaintiff,<br><br>v.<br><br>**CALIBER HOME LOANS, INC.**<br>c/o CT Corporation System<br>388 State St., Ste. 420,<br>Salem, OR 97301<br><br>and<br><br>**OCWEN LOAN SERVICING, LLC**<br>c/o Corporation Service Company<br>1127 Broadway St., NE, Ste. 310<br>Salem, OR 97301<br>Defendants. | **CASE NO.**<br><br>**COMPLAINT**<br>[Breach of Contract; Violation of RESPA; Violation of TILA; Violation of the Oregon Unlawful Trade Practices Act]<br><br>**DEMAND FOR JURY TRIAL** |

Now comes Plaintiff Tanya M. DeCharles ("Plaintiff"), by and through counsel,

for her Complaint against Defendants Caliber Home Loans, Inc. and Ocwen Loan

Servicing, LLC, states as follows:

## PARTIES, JURISDICTION, AND VENUE

1.      Plaintiff Tanya M. DeCharles ("Plaintiff") is the owner of real property and improvements located at and commonly known as resides at 9142 NE Alberta St., Portland, Oregon 97220-4781 (the "Home").

2.      Plaintiff has maintained, at all times relevant, and currently maintains the Home as her primary, principal residence.

3.      Defendant Caliber Home Loans, Inc. ("Caliber") is the current servicer of a note (the "Note") and a mortgage on the Home that allegedly secures the Note (the "Mortgage") (collectively referred to hereinafter as the "Loan").

4.      Caliber is a Delaware corporation with its principal place of business located at 3701 Regent Blvd., Ste. 200, Irving, Texas 75063.

5.      Defendant Ocwen Loan Servicing, LLC ("Ocwen") was the former servicer of the Loan and serviced the Loan prior to the transfer of the servicing rights to Caliber on or about December 7, 2015.

6.      Ocwen is a Delaware limited liability company with its principal place of business located at 1661 Worthington, Ste. 100, West Palm Beach, FL 33409.

7.      Caliber has serviced the Loan since acquiring the servicing rights to the Loan on or about December 7, 2015.

8.      This Court has jurisdiction pursuant to 28 U.S.C. §1331 as this action arises under the Dodd-Frank Wall Street Reform and Consumer Protection Act ("DFA"), Real Estate Settlement Procedures Act, 12 U.S.C. §§2601, *et seq.* ("RESPA").

9.      This action is specifically filed to enforce regulations promulgated by the

Consumer Finance Protection Bureau ("CFPB") that became effective on January 10, 2014, specifically, 12 C.F.R. §1024.35 of Regulation X and 12 C.F.R. §1026.36 of Regulation Z.

10.      This Court has supplemental jurisdiction to hear any and all state law claims pursuant to 28 U.S.C. §1367.

11.      Venue lies in this District pursuant to 28 U.S.C. §1391(b) as Plaintiff maintains the Home as her primary residence within this District.

## SUMMARY OF PLAINTIFF'S CASE AND BASIS FOR RELIEF

12.      In January 2013, the CFPB issued a number of final rules concerning mortgage markets in the United States, pursuant to the DFA, Public Law No. 111-203, 124 Stat. 1376.

13.      Specifically, on January 17, 2013, the CFPB issued the RESPA Mortgage Servicing Final Rules, 78 F.R. 10695 (Regulation X) (February 14, 2013), and TILA Mortgage Servicing Final Rules, 78 F.R. 10901 (Regulation Z) (February 14, 2013), which became effective on January 10, 2014.

14.      Plaintiff's Loan is a "federally related mortgage loan" as said term is defined by 12 C.F.R. §1024.2(b).

15.      Caliber is subject to the aforesaid regulations and does not qualify for the exception for "small servicers", as such term is defined in 12 C.F.R. §1026.41(e)(4), nor for the exemption for a "qualified lender", as such term is defined in 12 C.F.R. §617.700.

16.      Plaintiff is asserting claims for relief against Caliber for breach of the

specific rules under Regulations X and Z as set forth below.

17.      Plaintiff has a private right of action for the claimed breaches and such action provides for remedies including actual damages, costs, statutory damages, and attorney fees under RESPA pursuant to 12 U.S.C. §2605(f), and under TILA pursuant to 15 U.S.C §§1640 and 1641

18.      Plaintiff also asserts claims based upon state law breach of contract and for conduct which violates the ORS 646.608, *et seq.* and OAR 137-020-0805, *et seq.* which also entitles Plaintiff to recover actual damages, statutory damages, punitive damages, costs, and legal fees.

## THE SERVICING OF PLAINTIFF'S LOAN

### Caliber's refusal to honor Plaintiff's loan modification agreement with Ocwen

19.      On or about November 16, 2015, Ocwen sent correspondence to Plaintiff stating that Plaintiff had been approved for a loan modification (the "Approval"). A true and correct copy of the Approval is attached as **Exhibit 1**.

20.      The Approval explicitly states: "The first modified payment begins 12/1/2015. To accept this offer you may return the modification agreement along with payment of $1,212.10, which will be applied towards your first payment after the modification executes."

21.      Further, the Approval explicitly states that the signed Modification Agreement titled "Non-HAMP Loan Modification Agreement" (the "Agreement") "must be received in [Ocwen's] office on or before 11/30/2015."

22.      Plaintiff executed the Agreement in the presence of a notary on

November 24, 2015. A true and correct copy of the executed Agreement is attached as **Exhibit 2**.

23.     On or about November 27, 2015, Plaintiff sent the executed and notarized Agreement to Ocwen via FedEx Priority Overnight [Tracking No. 781793407049]. A true and correct copy of the proof of delivery of the Agreement is attached as **Exhibit 3**.

24.     Ocwen received the executed and notarized Agreement on November 30, 2015, in compliance with the requirements stated in the Approval. *See* Exhibit 3.

25.     On or about November 30, 2015, Plaintiff issued payment to Ocwen in the amount of $1,212.10, by and through electronic transmission, in satisfaction of the terms and requirements of Approval and Agreement (the "Initial Payment"). Proof of the Initial Payment is attached as **Exhibit 4**.

26.     On or about December 7, 2015, the servicing of the Loan transferred from Ocwen to Caliber.

27.     Caliber sent correspondence dated December 14, 2015 notifying Plaintiff of the change in the servicing of the Loan. A true and correct copy of the December 14, 2015 letter is attached as **Exhibit 5**.

28.     On or about December 15, 2015, Plaintiff spoke by telephone with a representative of Caliber identified as "Keesha", who stated their "Agent I.D." number was 24932.

29.     Despite Plaintiff having properly accepted the Agreement and having paid her first payment in full satisfaction of her obligations under the Agreement,

Keesha stated to Plaintiff that the Loan was due for the "October 2013" payment and that Plaintiff does not have a loan modification.

### Plaintiff Attempts to Have the Error Fixed

30.     On or about February 11, 2016, Plaintiff, through her counsel, sent a Notice of Error (the "Caliber NOE") to Caliber at Caliber's designated address for notices of error. A true and correct copy of the Caliber NOE is attached as **Exhibit 6**.

31.     In the Caliber NOE, Plaintiff asserts that Caliber committed one (1) error under 12 C.F.R. §1024.35(b)(11) by refusing to honor the Agreement.

32.     Caliber received the Caliber NOE on or about February 16, 2016. Proof of receipt of the Caliber NOE is attached as **Exhibit 7**.

33.     The Caliber NOE stated, "Based upon the foregoing, as of November 30, 2015, the Borrower had performed on and fulfilled any and all conditions required to accept the Agreement. As such, the Modification was accepted and effective prior to the date of the transfer of the servicing of the Loan to Caliber on December 7, 2015."

34.     Caliber responded to the Caliber NOE in correspondence dated March 8, 2016 (the "Caliber Response"). A true and correct copy of the Caliber Response is attached as **Exhibit 8**.

35.     Caliber admits, "Our records in [sic] indicate that on November 16, 2015 Ms. DeCharles was approved for a final modification." Caliber continues by vaguely asserting that Ocwen's notes indicate that the trial payments did not post correctly, contrary to Ocwen's own words contained in the Agreement. Finally, Caliber states, "Ms. DeCharles was sent a final modification agreement, and Ocwen was still

pending this agreement to be signed and executed for her first payment date of December 1, 2015," which confusingly suggested that Ocwen never received the signed Agreement.

36.     The statements made to Plaintiff in the Caliber Response were false. Ocwen received the signed Agreement on November 30, 2015 and Plaintiff electronically made the Initial Payment on the same day.

37.     Caliber concludes, "Please note, we would like to honor the prior servicer agreement, but in order to do so, we must have a signed copy of the final modification agreement."

38.     A copy of the Agreement and proof of Plaintiff's initial payment was attached to the Caliber NOE, and was therefore in Caliber's possession. *See* Exhibit 6.

39.     When servicing of the Loan transferred from Ocwen to Caliber, Caliber stepped into the shoes of Ocwen and became obligated to perform the terms of the final loan modification as set forth in the Agreement.

40.     Plaintiff has continued to honor the terms of the Agreement by sending to Caliber the monthly payment, as instructed by the Agreement. Proof of Plaintiff's tender of payments is attached as **Exhibit 9**.

41.     Caliber has refused to honor the Agreement and returns Plaintiff's monthly payments. Proof of the return of funds tendered is attached as **Exhibit 10**.

### Ocwen Refuses to Respond to Requests for Information

42.     In an effort to learn more information about her Loan and to get the

above described error corrected, Plaintiff, through her counsel, sent to Ocwen three certified letters seeking further information about her Loan.

43.     By certified letter dated February 18, 2016, captioned "Request for Information Pursuant to 12 C.F.R. §1024.36." ("Ocwen RFI #1"), Plaintiff sought information related to the servicing of her Loan, including a complete life of loan history and any information related to loss mitigation. A true and correct copy of Ocwen RFI #1 is attached as **Exhibit 11**.

44.     Ocwen received Ocwen RFI #1 on February 23, 2016. Proof of receipt is attached as **Exhibit 12**.

45.     By certified letter dated February 18, 2016, captioned "Request for Information Pursuant to 12 C.F.R. §1024.36(c)(3)" ("Ocwen RFI #2"), Plaintiff sought information related to the payoff of her Loan. A true and correct copy of Ocwen RFI #2 is attached as **Exhibit 13**.

46.     Ocwen received Ocwen RFI #2 on February 23, 2016. Proof of receipt is attached as **Exhibit 14**.

47.     By certified letter dated February 18, 2016, captioned "Request for Information Pursuant to 12 C.F.R. §1024.36 and 15 U.S.C. §1641(f)(2)." ("Ocwen RFI #3"), Plaintiff sought information related to the current owner and servicers of her Loan. A true and correct copy of Ocwen RFI #3 is attached as **Exhibit 15**.

48.     Ocwen received Ocwen RFI #3 on February 23, 2016. Proof of receipt is attached as **Exhibit 16**.

49.     In each RFI sent to Ocwen, the Plaintiff provided clear instructions to

8

Ocwen as to how it should respond and the consequences if it failed to respond. *See* Exhibits 11, 13, and 15.

50.     Each RFI was sent to Ocwen at the address designated by Ocwen for receipt of requests for information, which is "Ocwen Loan Servicing, Attn: Research, P.O. Box 24736, West Palm Beach, FL 33416-4736."

51.     Ocwen has provided no acknowledgement of receipt, response and or any information to Plaintiff in response to Ocwen RFI #1, Ocwen RFI #2, or Ocwen RFI #3.

## Caliber Starts the Foreclosure Process

52.     On June 21, 2016, Caliber sent Plaintiff a Notice of Resolution Conference pursuant to the State of Oregon Foreclosure Avoidance Program. A true and correct copy of this notice is attached as **Exhibit 17**.

53.     The notice referenced in paragraph 52 is a prerequisite to commencement of foreclosure.

54.     Even though Plaintiff did not believe her Loan was in default, she participated in the resolution conference in good faith and paid the required fee of $175.

55.     The initial conference was held on September 1, 2016.

56.     Plaintiff had to take time away from work, incur expenses of travel and had to pay a fee of $175, to participate in a conference which was not necessary given that Ocwen had contractually agreed to permanently modify her Loan.

57.     A representative for Caliber and its lawyer were present at the

conference. Each claimed to have no knowledge of the Agreement. Plaintiff provided each with a copy of the Caliber NOE.

58.     The conference was adjourned so that Caliber's representatives could "investigate" the matter further.

59.     Caliber did not act in good faith in the conference because it sent representatives who were unfamiliar with Plaintiff's Loan and the fact that Caliber had been notified of the Agreement by means of the Caliber NOE. Plaintiff believes Caliber participated in the conference as a ruse and had no desire to actually resolve the dispute concerning the Agreement and final modification of her Loan.

60.     Plaintiff has had no subsequent communication with Caliber and Plaintiff has not been informed of the results of any subsequent "investigation" undertaken by Caliber or its attorney.

61.     The conference has not resulted in any resolution.

62.     Left with no alternatives, and despite her erstwhile desire to have either Ocwen or Caliber correct the error, Plaintiff brings this case to save her Home.

<u>**FIRST CLAIM FOR RELIEF**</u>

<u>**BREACH OF CONTRACT [CALIBER]**</u>

63.     Plaintiff restates and incorporates by reference all of her statements and allegations contained in paragraphs 1 through 62, in their entirety, as if fully rewritten here.

64.     Ocwen made an offer to Plaintiff to modify her Loan.

65.     The terms of that offer are set forth in the Agreement.

66.     Plaintiff accepted Ocwen's offer and executed the Agreement.

67.     Plaintiff has performed her obligations pursuant to the terms of the Agreement. She executed and returned the Agreement to Ocwen in a timely manner and she paid consideration to Ocwen in the form of the initial payment called for by the Agreement. In addition, Plaintiff has continued to perform by tendering additional payments.

68.     Ocwen accepted Plaintiff's initial payment under the Agreement.

69.     As successor in interest to Ocwen, having assumed the servicing obligations for the Loan, Caliber was obligated to perform the Agreement.

70.     Caliber has breached the Agreement by failing to honor the terms of the Agreement which required Caliber to permanently modify Plaintiff's Loan.

71.     Caliber has breached the Agreement by failing to accept and properly apply payments made to Caliber pursuant to the terms of the Agreement.

72.     Caliber has breached the Agreement by claiming that Plaintiff owes amounts which are not due under the terms of the Loan, as modified. Caliber has misapplied Plaintiff's payment, has refused to accept tender of payment, has assessed late charges, has assessed improper amounts for interest, and has sought to collect other amounts which are not due.

73.     Plaintiff has suffered damage as a direct result of Caliber's breach of the Agreement.

74.     Plaintiff has been denied the benefit of her bargain - a modification of the Loan.

75.     By failing to modify the Loan as agreed, Caliber has caused Plaintiff to remain in a default status since December, 2015. This default status has been reported by Caliber to the national credit reporting agencies and as a direct consequence, Plaintiff's credit profile has been severely damaged. Plaintiff has been denied access to credit at commercially reasonable rates and has on information and belief been forced to pay higher rates for homeowner and car insurance.

76.     Plaintiff has been forced to retain counsel to attempt to resolve this matter with Caliber and ultimately to bring this lawsuit and is responsible for the payment of counsel fees and costs of suit incurred.

77.     Throughout this entire ordeal, Plaintiff has merely wanted to have the permanent modification to which she is entitled pursuant to her performance under the Agreement so that she could get out of default on the Loan, resume making timely, proper payments on the Loan to Caliber and any subsequent servicer, begin to rehabilitate her credit, and most importantly, remain in her Home.

## SECOND CLAIM FOR RELIEF

## VIOLATION OF 12 C.F.R. §1024.35(e) [CALIBER]

**(Failure to properly respond to a notice of error in violation of 12 C.F.R. §1024.35)**

78.     Plaintiff restates and incorporates by reference all of her statements and allegations contained in paragraphs 1 through 62, in their entirety, as if fully rewritten herein.

79.     12 C.F.R. §1024.35(a) provides, "A servicer shall comply with the

requirements of this section for any written notice from the borrower that asserts an error and that includes the name of the borrower, information that enables the servicer to identify the borrower's mortgage loan account, and the error the borrower believes has occurred."

80.     Comment 1 of the CFPB's Official Interpretations of 12 C.F.R. §1024.35(a) provides that "[a] notice of error is submitted by a borrower if the notice of error is submitted by an agent of the borrower."

81.     12 C.F.R. §1024.36(c) provides that a servicer must acknowledge in writing receiving an information request from a borrower within five (5) days of receipt.

82.     12 C.F.R. §1024.35(b) provides, in relevant part: "For purposes of this section, the term "error" refers to the following categories of covered error:" […] "(11) Any other error relating to the servicing of a borrower's mortgage loan."

83.     12 C.F.R. §1024.35(e)(1) provides that a servicer must respond to a notice of error by either "[c]orrecting the error or errors identified by the borrower and providing the borrower with a written notification of the correction, the effective date of the correction, and contact information, including a telephone number, for further assistance" or "[c]onducting a reasonable investigation and providing the borrower with a written notification that includes a statement that the servicer has determined that no error occurred, a statement of the reason or reasons for this determination, a statement of the borrower's right to request documents relied upon by the servicer in reaching its determination, information regarding how the

borrower can request such documents, and contact information, including a telephone number, for further assistance."

84.     The Caliber NOE meets the requirements of a notice of error as defined by 12 C.F.R. §1024.35(a). See Exhibit 6.

85.     Plaintiff alleged by and through the Caliber NOE that Caliber committed one (1) clear and distinct error in relation to the Loan pursuant to 12 C.F.R. §1024.35(b)(11) by refusing to honor the loan modification agreement from Ocwen. See Exhibit 6.

86.     The Caliber Response consisted of a confusingly worded explanation that there is no error because Plaintiff allegedly failed to comply with the terms of the Agreement. See Exhibit 8.

87.     The Caliber Response falsely asserted that the Agreement had not been executed by Plaintiff, had not been returned to Ocwen and had not been provided to Caliber.

88.     Plaintiff complied with all of the terms of the Agreement because she executed the Agreement and timely sent the executed Agreement to Ocwen together with her required payment.

89.     Ocwen received the signed Agreement and first modification payment before the due date.

90.     Plaintiff brought the error to Caliber's attention in an effort to have Caliber fix the problem so that her Loan would be modified as agreed. Notwithstanding having an opportunity to do so, Caliber failed to correct the error

and failed to conduct a reasonable investigation to discover the existence of that error.

91.     Caliber did not correct the error by permanently modifying the Loan.

92.     Any reasonable investigation into the error alleged by and through the Caliber NOE would have shown that Plaintiff complied with the terms of the Agreement.

93.     Caliber wholly failed to perform a reasonable investigation into the error alleged by and through the Caliber NOE concerning refusal to honor the Agreement pursuant to 12 C.F.R. §1024.35(b)(11) prior to making their determination, as contained in the Caliber Response, that no error occurred and that "the modification was denied."

94.     Caliber's actions in violation of 12 C.F.R. §1024.35(e) were part of a continuous and egregious pattern and practice of behavior in conscious disregard for Plaintiff's rights.

95.     As a direct result of Caliber's actions, Plaintiff has suffered actual damages. In particular, Plaintiff has been improperly denied modification of the Loan, she has been held in a default status from December, 2015 to the present and this status has severely damaged her credit profile, she has had additional interest charges, late fees and other charges added to her loan, has had to take time from work and incurred travel expenses to meet with her lawyers in an attempt to correct the error, she has had to incur administrative fees, legal fees and court costs in an attempt to have Caliber correct the error, and she had to bring this suit and pay court costs and attorneys' fees to seek appropriate relief.

## THIRD CLAIM FOR RELIEF

## VIOLATION OF 12 C.F.R. §1024.41(g) [CALIBER]

### (Caliber's Violation of Prohibition on Moving in Toward Foreclosure)

96.    Plaintiff restates and incorporates by reference all of her statements and allegations contained in paragraphs 1 through 62, in their entirety, as if fully rewritten herein.

97.    12 C.F.R. §1024.41(g) states that if a borrower submits a complete loss mitigation application after the first filing required for any judicial foreclosure process, but more than thirty-seven (37) days before a foreclosure sale, then a servicer cannot move for foreclosure judgment or order of sale unless: (1) the servicer has sent written notice pursuant to 12 C.F.R. §1024.41(c)(1)(ii), stating that the borrower is not eligible for any loss mitigation options and the borrower has not requested an appeal, or the borrower's appeal has been denied; (2) the borrower rejects all loss mitigation options offered by the servicer; or, (3) the borrower fails to perform under an agreement on a loss mitigation option.

98.    Comment 2 of the Official CFPB Interpretations to 12 C.F.R. §1024.41(g) provides that:

> Nothing in § 1024.41(g) prevents a servicer from proceeding with the foreclosure process, including any publication, arbitration, or mediation requirements established by applicable law, when the first notice or filing for a foreclosure proceeding occurred before a servicer receives a complete loss mitigation application so long as any such steps in the foreclosure process do not cause or directly result in the issuance of a foreclosure judgment or order of sale, or the conduct of a foreclosure sale, in violation of § 1024.41.

99.     12 C.F.R. §1024.41(c)(2)(iv) provides that:

> If a borrower submits all the missing documents and information as stated in the notice required pursuant to § 102[4].41(b)(2)(i)(B), or no additional information is requested in such notice, the application shall be considered facially complete. If the servicer later discovers additional information or corrections to a previously submitted document are required to complete the application, the servicer must promptly request the missing information or corrected documents and treat the application as complete for the purposes of paragraphs (f)(2) and (g) of this section until the borrower is given a reasonable opportunity to complete the application. If the borrower completes the application within this period, the application shall be considered complete as of the date it was facially complete, for the purposes of paragraphs (d), (e), (f)(2), (g), and (h) of this section, and as of the date the application was actually complete for the purposes of paragraph (c).

100.    12 C.F.R. §1024.41(c)(2)(iv) provides that "[i]f a borrower submits all the missing documents and information as stated in the notice required pursuant to §1026.41(b)(2)(i)(B), or no additional information is requested in such notice, the application shall be considered facially complete".

101.    Comment 1 of the Official CFPB Interpretations to 12 C.F.R. §1024.41(c)(2)(iv) provides that 12 C.F.R. §1024.41(c)(2)(iv) "requires a servicer to treat a facially complete application as complete for the purposes of paragraphs (f)(2) and (g) until the borrower has been given a reasonable opportunity to complete the application."

102.    Ocwen concedes that Plaintiff's application for loss mitigation was complete because Ocwen sent Plaintiff an approval letter (Exhibit 1) and the

Agreement (Exhibit 2). This admission is binding upon Caliber.

103.    Ocwen's approval and its tender of the Agreement were made more than thirty-seven (37) days prior to any foreclosure sale.

104.    Caliber succeeded to the obligations of Ocwen when servicing was transferred.

105.    At the time that servicing was transferred from Ocwen to Caliber, loss mitigation was still ongoing. Plaintiff had accepted the Agreement and had performed. All that remained was for Caliber as Ocwen's successor in interest to follow through with the Agreement and permanently modify Plaintiff's Loan.

106.    Plaintiff's attempt to obtain loss mitigation has been ongoing and to this date remains incomplete.

107.    Caliber's statement in the Caliber Response that loss mitigation had been denied is ineffectual because Caliber acknowledges the Agreement and subsequent to acceptance by Plaintiff, Caliber had no right to unilaterally change the terms of the Agreement or refuse to honor the Agreement by entering into a permanent modification of the Loan.

108.    Rather than taking reasonable steps to avoid the foreclosure sale from being conducted, Caliber and its counsel took affirmative action by sending Plaintiff the Notice of Resolution Conference. This act started the foreclosure process.

109.    Caliber also attended the conference and falsely represented to Plaintiff and the conference mediator that it had no knowledge of the Agreement.

110.    Satisfactory compliance with the resolution conference requirements of

Oregon law is a prerequisite to the filing of suit to foreclose a residential mortgage pursuant to ORS 86.726, et seq.

111.    Caliber took the first step under Oregon law required to initiate a residential foreclosure more than 37 days prior to any foreclosure sale while loss mitigation was pending.

112.    Caliber's actions in failing or refusing to take reasonable steps to avoid foreclosure sale and its affirmative actions described hereinabove constitute a violation of 12 C.F.R. § 1024.41(g).

113.    Caliber's actions are believed to be a pattern and practice of behavior in conscious disregard for the Plaintiff's rights.

114.    As a result of Caliber's actions, Caliber is liable to Plaintiff for actual damages, as described, *supra*, as well as for statutory damages, costs, and attorney fees.

## FOURTH AND FIFTH CLAIMS FOR RELIEF

## VIOLATIONS OF 12 C.F.R. §1024.36(c) AND §1024.36(d) [OCWEN]

### (Failure to acknowledge and properly respond to a request for information)

115.    Plaintiff restates and incorporates by reference all of her statements and allegations contained in paragraphs 1 through 62 in their entirety, as if fully rewritten here.

116.    12 C.F.R. §1024.36(a) provides that "[a] servicer shall comply with the requirements of this section for any written request for information from a borrower that includes the name of the borrower, information that enables the servicer to

identify the borrower's mortgage loan account, and states the information the borrower is requesting with respect to the borrower's mortgage loan."

117.    Comment 1 of the Official Interpretations of the CFPB to 12 C.F.R. §1024.36(a) provides that "[a]n information request is submitted by a borrower if the information request is submitted by an agent of the borrower."

118.    12 C.F.R. §1024.36(c) provides that a servicer must acknowledge in writing receiving an information request from a borrower within five (5) days of receipt.

119.    12 C.F.R. §1024.36(d)(1) provides that a servicer must respond to a request for information by either "[p]roviding the borrower with the requested information and contact information, including a telephone number, for further assistance in writing" or "[c]onducting a reasonable search for the requested information and providing the borrower with a written notification that states that the servicer has determined that the requested information is not available to the servicer, provides the basis for the servicer's determination, and provides contact information, including a telephone number, for further assistance."

120.    Furthermore, 12 C.F.R. §1024.36(d)(2)(i) provides that:

A servicer must comply with the requirements of paragraph (d)(1) of this section:

(A) Not later than 10 days (excluding legal public holidays, Saturdays, and Sundays) after the servicer receives an information request for the identity of, and address or other relevant contact information for, the owner or assignee of a mortgage loan; and

(B) For all other requests for information, not later than

30 days (excluding legal public holidays, Saturdays, and Sundays) after the servicer receives the information request.

121.    12 C.F.R. §1024.36(d)(2)(i) provides that "[a] servicer may not extend the time period for requests for information governed by paragraph (d)(2)(i)(A) of this section.

122.    Ocwen RFI #1 constituted a request for information pursuant to 12 C.F.R. §1024.36.

123.    Ocwen RFI #1 constituted a request for information pursuant to 12 C.F.R. §1024.36(d)(2)(i)(A) as Ocwen RFI #1 requested information as to "the identity of, and address or other relevant contact information for, the owner or assignee of a mortgage loan."

124.    Pursuant to 12 C.F.R. §1024.36(c), Ocwen was required to acknowledge receipt of Ocwen RFI #1 on or before February 1, 2016.

125.    Pursuant to 12 C.F.R. §1024.36(d), Ocwen was required to provide written correspondence to Plaintiff responding to Ocwen RFI #1 in compliance with the requirements of 12 C.F.R. §1024.36(d)(1) on or before April 5, 2016.

126.    Neither Plaintiff nor her attorneys received any written correspondence from Ocwen either acknowledging or responding to Ocwen RFI #1.

127.    Ocwen's actions in failing to acknowledge receipt of Ocwen RFI #1 constitute a willful violation of 12 C.F.R. §1024.36(c).

128.    Ocwen's actions in failing to provide written correspondence to Plaintiff responding to Ocwen RFI #1 in compliance with the requirements of 12 C.F.R.

§1024.36(d)(1), constitute a willful violation of 12 C.F.R. §1024.36(c).

129.     As a direct result of Ocwen's actions, Plaintiff has suffered actual damages. In particular, Plaintiff has been improperly denied information which would assist her in correction of the error of Caliber's refusal to honor the modification of the Loan which she negotiated with Ocwen, she has been held in a default status from December, 2015 to the present and this status has severely damaged her credit profile, she has had to take time from work and incurred travel expenses to meet with her lawyers in an attempt to correct the error, she has had to incur legal fees and costs in an attempt to have Caliber correct the error, she had to bring this suit and pay costs and attorneys' fees to seek appropriate relief.

130.     Ocwen's actions in violation of 12 C.F.R. §1024.36(c) and §1024.36(d)(1) were part of a continuous and egregious pattern and practice of behavior in conscious disregard for Plaintiff's rights.

### SIXTH AND SEVENTH CLAIMS FOR RELIEF

### VIOLATION OF 12 C.F.R. §1026.36 [OCWEN]

**(Failure to acknowledge and properly respond to a request for information to provide an accurate payoff statement within seven (7) business days of receipt of a borrower's written request)**

131.     Plaintiff restates and incorporates by reference all of her statements and allegations contained in paragraphs 1 through 62 in their entirety, as if fully rewritten here.

132.     Ocwen RFI #2 constituted a request for a payoff statement pursuant to 12 C.F.R. §1026.36(c)(3) as Ocwen RFI #2 requested information as to "an accurate

statement of the total outstanding balance that would be required to pay the consumer's obligation in full as of a specified date."

133.    Pursuant to 12 C.F.R. §1026.36(c), Ocwen was required to provide written correspondence to Plaintiff responding to Ocwen RFI #2 on or before March 4, 2016.

134.    Neither Plaintiff nor OCLC received any written correspondence from Ocwen acknowledging or responding to Ocwen RFI #2.

135.    Ocwen's actions in failing to acknowledge receipt of Ocwen RFI #2 constitute a willful violation of 12 C.F.R. §1024.36(c).

136.    Ocwen's actions in failing to provide written correspondence to Plaintiff responding to Ocwen RFI #2 in compliance with the requirements of 12 C.F.R. §1026.36(c)(3) on or before March 4, 2016, constitute a willful violation of 12 C.F.R. §1024.36(d).

137.    As a direct result of Ocwen's actions, Plaintiff has suffered actual damages. In particular, Plaintiff has been improperly denied information which would assist her in correction of the error of Caliber's refusal to honor the modification of the Loan which she negotiated with Ocwen, she has been held in a default status from December, 2015 to the present and this status has severely damaged her credit profile, she has had to take time from work and incurred travel expenses to meet with her lawyers in an attempt to correct the error, she has had to incur legal fees and costs in an attempt to have Caliber correct the error, she had to bring this suit and pay costs and attorneys' fees to seek appropriate relief.

138.    Ocwen's actions are believed to be a pattern and practice of behavior in conscious disregard for Plaintiff's rights.

## EIGHTH AND NINTH CLAIMS FOR RELIEF

### VIOLATION OF 12 C.F.R. §1026.36 AND 15 U.S.C. §1641(f)(2) [OCWEN]

**(Failure to acknowledge and properly respond to a request for information to provide an the identity of, and address or other relevant information for, the owner or assignee of a mortgage loan)**

139.    Plaintiff restates and incorporates by reference all of her statements and allegations contained in paragraphs 1 through 62 in their entirety, as if fully rewritten herein.

140.    Ocwen RFI #3 constituted a request for a payoff statement pursuant to 12 C.F.R. §1026.36(c)(3) as Ocwen RFI #3 requested information as to the identity and address for the current owner, servicer and master servicer for her Loan.

141.    Pursuant to 12 C.F.R. §1026.36(c), Ocwen was required to provide written correspondence to Plaintiff responding to Ocwen RFI #2 on or before March 4, 2016.

142.    Neither Plaintiff nor OCLC received any written correspondence from Ocwen acknowledging or responding to Ocwen RFI #2.

143.    Ocwen's actions in failing to acknowledge receipt of Ocwen RFI #2 constitute a willful violation of 12 C.F.R. §1024.36(c).

144.    Ocwen's actions in failing to provide written correspondence to Plaintiff responding to Ocwen RFI #2 in compliance with the requirements of 12 C.F.R. §1024.36(c) on or before March 4, 2016, constitute a willful violation of 12 C.F.R.

§10264.36(d) and a violation of 15 U.S.C. §1641(f)(2).

145.    As a direct result of Ocwen's actions, Plaintiff has suffered actual damages. In particular, Plaintiff has been improperly denied information which would assist her in correction of the error or Caliber's refusal to honor the modification of the Loan which she negotiated with Ocwen, she has been held in a default status from December, 2015 to the present and this status has severely damaged her credit profile, she has had to take time from work and incurred travel expenses to meet with her lawyers in an attempt to correct the error, she has had to incur legal fees and costs in an attempt to have Caliber correct the error, she had to bring this suit and pay costs and attorneys' fees to seek appropriate relief.

146.    Ocwen's actions are believed to be a pattern and practice of behavior in conscious disregard for Plaintiff's rights.

## TENTH CLAIM FOR RELIEF

### VIOLATIONS OF OREGON UNLAWFUL TRADE PRACTICES ACT ORS 646.608(1)(u) and OAR 137-020-0805(5) [OCWEN AND CALIBER]

147.    Plaintiff restates and incorporates by reference all of her statements and allegations contained in paragraphs 1 through 62 in their entirety, as if fully rewritten herein.

148.    OAR 137-020-0805 declares certain practices relating to mortgage loan servicing to be unlawful trade practices, including, assessing a late fee for a payment made on time or within the payments grace period; assessing or collecting unauthorized default fees; misrepresenting any material information regarding a

loan modification, misrepresenting information in an affidavit that describes the servicer's authority to foreclose; failing to comply with certain provisions of the Real Estate Settlement Procedures Act; and, failing to deal with a borrower in good faith.

149.     The conduct of Ocwen and Caliber as described hereinabove, including their failure to perform contractual obligations, failure to correct their errors when those errors were brought to their attention, failure to properly acknowledge add respond to requests for information, failure to correct errors, in maintaining Plaintiff and the Loan in a state of default, in misrepresenting information regarding loan modification, by failing to properly apply payments, charging interest, fees and other sums not due, and otherwise failing to deal with Plaintiff in good faith, constitutes a violation of Oregon's Unlawful Business and Trade Practices Statute, ORS § 646.608, specifically O.A.R. 137-020-0805, et seq.

150.     As a direct result of the actions of Ocwen and Caliber, Plaintiff has suffered actual damages. In particular, Plaintiff has been improperly denied modification of the Loan, she has been held in a default status from December, 2015 to the present and this status has severely damaged her credit profile, she has had additional interest charges, late fees, and other charges added to her loan by her servicers, and she has had to take time from work and incurred travel expenses to meet with her lawyers in an attempt to correct the error, she has also had to incur legal fees and costs in an attempt to have Caliber correct the error, she had to bring this suit and pay court costs and attorneys' fees to seek appropriate relief.

151.    The conduct of Ocwen and Caliber was unconscionable in light of the fact that the error in refusing to modify the Loan was brought to Caliber's attention and Caliber did not properly investigate or correct the error, but instead continues to this date to assert that there was no error and that the Agreement is not in place. Ocwen simply ignored Plaintiff's attempts to get information that perhaps would have allowed the error to be remedied by Caliber. Both servicers are complicit in the harm caused to Plaintiff.

152.    The conduct of Ocwen and Caliber is egregious, deceptive, and undertaken with malicious intent or with clear disregard of Plaintiff's rights to have her Loan modified and to live without the fear and anxiety of being forcibly displaced from her Home.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against Defendants as follows:

1. **On Plaintiff's First Claim for Relief for Breach of Contract against Defendant Caliber for:**

    A.  A finding that Caliber breached the Agreement;

    B.  Plaintiff's actual damages in an amount to be determined at trial; ,

    C.  Plaintiff's costs and reasonable attorneys' fees; and

    D.  Such other and further relief as is just and proper.

2. **On Plaintiff's Second Claim for Relief for Breach of Contract against Defendant Caliber for Failure to properly respond to a notice of error in violation of 12 C.F.R. §1024.35:**

    A.  A finding that Caliber violated 12 C.F.R. §1024.35(b)(11);

    B.  Plaintiff's statutory damages in the amount of Two Thousand Dollars ($2,000.00);

C.  Plaintiff's actual damages in an amount to be determined at trial;

D.  Plaintiff's costs and reasonable attorneys' fees; and,

E.  Such other and further relief this Court may deem just and proper.

**3. On Plaintiff's Third Claim for Relief for Caliber's Violation of Prohibition on Moving in Toward Foreclosure against Defendant Caliber for:**

A.  A finding that Caliber breached 12 C.F.R. §1024.41(g);

B.  Plaintiff's statutory damages;

C.  Plaintiff's actual damages in an amount to be determined at trial;

D.  Plaintiffs cost's and reasonable attorney fees; and

E.  Such other and further relief this Court may deem just and proper.

**4. On Plaintiff's Fourth Claim for Violations of 12 C.F.R. §1024.36(c) against Defendant Ocwen for:**

A.  A finding that Ocwen violated 12 C.F.R. §1024.36(c) and §1024.36(d)(1);

B.  Plaintiff's statutory damages in the amount of Two Thousand Dollars ($2,000.00) as to Count Three (12 C.F.R. §1024.36(c)) and statutory damages in the amount of Two Thousand Dollars ($2,000.00) as to Count Four (§1024.36(d)(1);

C.  Plaintiff' actual damages in an amount to be determined at trial;

D.  Plaintiff's costs and reasonable attorneys' fees; and,

E.  Such other and further relief this Court may deem just and proper.

**5. On Plaintiff's Fifth Claim for Violations of §1024.36(d) against Defendant Ocwen for:**

A.  A finding that Ocwen violated 12 C.F.R. §1024.36(c) and §1024.36(d)(1);

B.  Plaintiff's statutory damages in the amount of Two Thousand Dollars ($2,000.00) as to Count Three (12 C.F.R. §1024.36(c)) and statutory damages in the amount of Two Thousand Dollars ($2,000.00) as to Count Four (§1024.36(d)(1);

C.  Plaintiff's actual damages in an amount to be determined at trial;

D.  Plaintiff's costs and reasonable attorneys' fees; and,

E. Such other and further relief this Court may deem just and proper.

6. **On Plaintiff's Sixth Claim for Violations of §1024.36 against Defendant Ocwen for:**

   A. A finding that Ocwen violated 12 C.F.R. §1024.36(c) and §1024.36(d)(1);

   B. Plaintiff's statutory damages in the amount of Two Thousand Dollars ($2,000.00) as to Count Five (12 C.F.R. §1024.36(c)) and statutory damages in the amount of Two Thousand Dollars ($2,000.00) as to Count Six (§1026.36(d)(1);

   C. Plaintiff's actual damages in an amount to be determined at trial;

   D. Plaintiff's costs and reasonable attorneys' fees; and,

   E. Such other and further relief this Court may deem just and proper.

7. **On Plaintiff's Seventh Claim for Violations of §1024.36 against Defendant Ocwen for:**

   A. A finding that Ocwen violated 12 C.F.R. §1024.36(c) and §1024.36(d)(1);

   B. Plaintiff's statutory damages in the amount of Two Thousand Dollars ($2,000.00) as to Count Five (12 C.F.R. §1024.36(c)) and statutory damages in the amount of Two Thousand Dollars ($2,000.00) as to Count Six (§1026.36(d)(1);

   C. Plaintiff's actual damages in an amount to be determined at trial;

   D. Plaintiff's costs and reasonable attorneys' fees; and,

   E. Such other and further relief this Court may deem just and proper.

8. **On Plaintiff's Eighth Claim for Relief for Violation of 12 C.F.R. §1026.36(c) against Defendant Ocwen for:**

   A. A finding that Ocwen violated 12 C.F.R. §10264.36(d) and a violation of 15 U.S.C. §1641(f)(2);

   B. Plaintiff's statutory damages in the amount of Two Thousand Dollars ($2,000.00) as to Count Seven (12 C.F.R. §1024.36(d)) and statutory damages in the amount of Four Thousand Dollars ($4,000.00) as to Count Eight (§1024.36(d)(2) and 15 U.S.C. §1641(f)(2);

   C. Plaintiff's actual damages in an amount to be determined at trial;

   D. Plaintiff's costs and reasonable attorneys' fees; and,

E. Such other and further relief this Court may deem just and proper.

9. **On Plaintiff's Ninth Claim for Relief for Violation of 12 C.F.R. §1024.36(d) against Defendant Ocwen for:**

   A. A finding that Ocwen violated 12 C.F.R. §10264.36(d) and a violation of 15 U.S.C. §1641(f)(2);

   B. Plaintiff's statutory damages in the amount of Two Thousand Dollars ($2,000.00) as to Count Seven (12 C.F.R. §1024.36(d)) and statutory damages in the amount of Four Thousand Dollars ($4,000.00) as to Count Eight (§1024.36(d)(2) and 15 U.S.C. §1641(f)(2);

   C. Plaintiff's actual damages in an amount to be determined at trial;

   D. Plaintiff's costs and reasonable attorneys' fees; and,

   E. Such other and further relief this Court may deem just and proper.

10. **On Plaintiff's Ninth Claim for Relief for Unlawful Trade Practices against Defendants Caliber and Ocwen for:**

   A. A finding that Ocwen and Caliber violated Oregon's Unlawful Business and Trade Practices Statute, ORS § 646.608, specifically O.A.R. 137-020-0805, *et seq.*

   B. Plaintiff's actual damages and punitive damages in an amount to be determined at trial;

   C. Plaintiff's costs and reasonable attorneys' fees; and,

   D. Such other and further relief this Court may deem just and proper.

Respectfully submitted,

**OREGON CONSUMER LAW CENTER**

*/s/ Jeffrey A. Long*

Jeffrey A. Long, OSB No. 862350
4040 SW Douglas Way
Lake Oswego, OR 97035
Telephone: (503) 635-7773
Fax: (503) 822-6727
jefflonglawyer@gmail.com

30

/s/ *Marc E. Dann*
Marc E. Dann, Ohio Reg. No. 0039425
The Dann Law Firm Co., LPA
PO Box 6031040
Cleveland, OH 44103
Telephone: (216) 373-0539
Fax: (216) 373-0536
notices@dannlaw.com
*Application for Pro Hac Vice Pending*

## JURY DEMAND

Plaintiff hereby requests a trial by jury on all issues, with the maximum number of jurors permitted by law.

/s/ *Jeffrey A. Long*
Jeffrey A. Long, OSB No. 862350